TEXAS & P. RY. CO. v. HOWELL.
(No. 1547.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 15, 1916. Rehearing Denied Feb. 3, 1916.)

1. MASTER AND SERVANT ⬥⟳330(3)—MASTER'S LIABILITY TO THIRD PERSONS—EVIDENCE—NEGLIGENCE OF SERVANT — PROXIMATE CAUSE.

In an action for damages to a horse which became frightened at the actions of section hands on defendant's railway and ran into a fence, evidence *held* to sustain findings by the jury that the acts of the hands were negligent, and that such acts were the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1272; Dec. Dig. ⬥⟳ 330(3).]

2. MASTER AND SERVANT ⬥⟳302(2)—MASTER'S LIABILITY TO THIRD PERSONS — ACTS OF SERVANTS BEYOND EMPLOYMENT.

A railway company is not liable for injuries to a horse which was frightened by section hands shouting, laughing, and waving their hands at it, even though at the time they were engaged in their duties, since such acts had no connection with their employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1218, 1219; Dec. Dig. ⬥⟳302(2).]

3. MASTER AND SERVANT ⬥⟳302(2)—MASTER'S LIABILITY TO THIRD PERSONS—PROXIMATE CAUSE.

Where a horse which was being driven along a lane adjoining a railroad right of way with other animals and which stopped when about to pass a section gang at work on the track and became frightened when the section hands began shouting, laughing, and waving their hands, jumped over a fence, and sustained fatal injuries, and there was no evidence that the work of the section hands was being done in a negligent or improper manner, the fright of the horse must be attributed to the other acts of the hands for which the railway company was not liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1218, 1219; Dec. Dig. ⬥⟳302(2).]

Appeal from Fannin County Court; S. F. Leslie, Judge.

Action by L. H. Howell against the Texas & Pacific Railway Company. Judgment for the plaintiff, and' defendant appeals. Reversed, and judgment rendered for defendants.

Thos. P. Steger, of Bonham, and Geo. Thompson, of Dallas, for appellant. Cunningham & McMahon, of Bonham, for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee for $199, the value of a horse killed near the appellant's

right of way. It is claimed that the animal, while traveling along a lane parallel with and near the appellant's road, was frightened by a group of section hands at work upon the track and caused to run against a wire fence, sustaining fatal injuries.

[1] The only testimony introduced on the trial as to how the injury occurred was that of the plaintiff. He stated that he was on foot driving his horse and three mules from a pasture to his residence; that the lane he was traveling was about 15 yards from the railway track, and at the time the injury occurred he was about 50 yards in the rear of the animals. He said:

"At the time of the injury to my horse he was a little just south of the railway's fence, which runs along the south line of its right of way. * * * I had been to the pasture after my stock, and was driving this horse and three mules from the pasture to my house, traveling this lane and going west. * * * There was a bunch of Mexicans at work on the track of the railway at the time of the injury, and just as the stock got opposite these Mexicans and south of them they had the track raised about a foot and were working on it, putting sand and gravel under the track, using spades, shovels, and crowbars in doing the work. When the stock got up even with the Mexicans, they kind of stopped, and the Mexicans commenced to pound the rails and to chouse the gravel with the shovels, and some of them pulled off their hats and hollered, and the mules rushed by, and the horse jumped over the fence. The Mexicans choused the gravel with the shovels and made lots of noise. That is the way they did their work. Yes; they saw the stock scared. Yes; they kept chousing that gravel down. The Mexicans hollered and nickered like a horse, and the horse jumped over the fence. The Mexicans were looking at the horse at that time, and after the horse went into the fence the Mexicans nickered like a horse. When the horse and mules stopped the Mexicans kept on making the noise worse. After the horse went into the fence the Mexicans did not say a word, but laughed."

The testimony further shows that the horse, in attempting to jump over the fence, sustained injuries which later proved fatal. At the conclusion of the evidence counsel for appellant requested a peremptory instruction for the defendant, which was refused, and the case was submitted on special issues.

The questions propounded to the jury were as follows:

"(1) Were the defendant's employés guilty of negligence in causing injury to the plaintiff's animal?

"(2) If you answer the foregoing question in the affirmative, then I ask you if such negligence, if any, was the proximate cause of the injury?"

Both of these questions were answered in the affirmative. The third question was for the purpose of ascertaining the value of the animal.

[2] Under the evidence the jury could not have given different answers to the first two questions. That the conduct of the Mexicans on that occasion was the sole proximate cause of this injury is conclusively shown. But that fact alone does not furnish the true test

---

⬥⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of liability on the part of the railway company. The master is not to be held responsible for all the wrongful acts of the servant, even though performed at the time the servant is engaged in the master's service. The master is liable only for those acts which are done at his direction or in furtherance of the business for which the servant is employed. If while engaged in the performance of his duties the servant, of his own volition, does some act wholly disconnected with the master's service, from which an injury results, he alone is responsible for the consequences. The Mexicans who caused this injury were presumably section hands engaged upon the railway right of way in repairing the track. Their conduct in yelling, laughing, and waving their hats had no connection whatever with the service which they were engaged to perform. If those acts were the sole proximate cause of the injury to this animal, the Mexicans alone are liable. The railroad company can be held responsible only upon satisfactory proof that the manner in which the Mexicans were performing their work was, under the circumstances, negligent.

[3] The important inquiry then is: What conduct on the part of the Mexicans caused the animal to rush against the wire fence and sustain the injuries? Was it their noisy laughter, loud talking, and waving of hats, or was it their manner of repairing the track? · We might further inquire which of these different acts was most likely to cause the animal to take fright? To this we think there can reasonably be but one answer: That it was the boisterous, voluntary misconduct on the part of the Mexicans. But, conceding that it were otherwise, liability on the part of the railroad company arises only upon a showing that the section men were guilty of negligence in continuing to do their work, or in the manner in which they continued their work, after discovering the presence of the animals and that they were frightened. The men were upon the premises of the railroad company and were engaged in a lawful and necessary employment. There is no evidence that this was being carried on in an unusual manner, or that anything was being done that was not necessary under the circumstances, or that this particular class of work was calculated to frighten animals passing along the lane at that distance. There was no duty resting upon these employés to cease their work, unless the animals showed fright to that extent which would indicate to a prudent person that they were liable to injure themselves. The mere fact that the animals stopped or slackened their speed when opposite the section men was not alone sufficient to put the latter upon notice that one or more of them might rush into the wire fence instead of going down an unobstructed lane as two of them did. The conduct of the horse clearly indicated that he was suddenly made frantic, and this could be attributed to nothing but the boisterous conduct of the Mexicans outside of the scope of their employment.

The judgment of the county court will therefore be reversed, and judgment here rendered in favor of the appellant.